E-FILED
Thursday, 13 August, 2026 11:47:33 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DARRIAN DANIELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:25-cv-3120-DJQ |
| | ) | |
| LUPITA GARCIA, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Plaintiff, proceeding pro se and presently incarcerated at Western Illinois

Correctional Center brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging

an Eighth Amendment claim for deliberate indifference to a serious medical need

against Defendants Garcia and Little in their individual capacities. The matter comes

before this Court for ruling on Plaintiff's Motion for Leave to File an Amended

Complaint (Doc. 62) and Defendants' Motion for Summary Judgment on the issue of

exhaustion of administrative remedies. (Doc. 65).

### I.  PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff's motion seeks leave to add Western Illinois Correctional Center's

warden as a defendant in this case. Plaintiff states that the Court previously notified the

warden of his allegations that he was not receiving mental health treatment "because

[Defendants] Garcia and Littles don't work at Western Il. C.C. anymore and I'm being

denied all the mental health staff's names so someone has to be held accountable." (Doc.

62-1 at 2). Plaintiff asserts that the warden should now be held liable because he has notice of his allegations regarding mental health treatment, but he failed to take action.

Regarding Plaintiff's latter argument, the Court's Text Order entered March 20, 2026, directed the Clerk to send a courtesy copy of Plaintiff's motion for preliminary injunction to the warden "to inform him or her of Plaintiff's allegations re: mental health treatment." (Doc. 40). Courts in this district routinely forward these types of pleadings to wardens for purposes of notifying these officials of a potential issue and affording them an opportunity to address them before court proceedings may be able to do so. The Court's actions should not be construed as an attempt to impose liability on any person.

A district court should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, undue prejudice to defendants, or where the amendment would be futile." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 855 (7th Cir. 2017).

The proposed amended complaint Plaintiff attached to his motion does not include the allegations currently pending in this case. Any amended complaint the Court allows will supersede hiss previous complaints, resulting in the dismissal of his claims against Defendants Garcia and Littles. *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture."). The Court assumes Plaintiff does not want to dismiss these claims, and absent the inclusion of all allegations against all officials

Plaintiff intends to sue, Plaintiff's proposed amended complaint is the type of piecemeal pleading the Court does not accept. *See* (Doc. 35 at 2, ¶ 2). Plaintiff filed his motion outside of the 90-day deadline set forth in the Court's Scheduling Order. *Id.*

The Prison Litigation Reform Act also requires Plaintiff to fully exhaust his administrative remedies regarding any new claims and officials before seeking a judicial remedy. *See* 42 U.S.C. § 1997e(a); *Ford v. Johnson*, 362 F.3d 395 (7th Cir. 2004). Plaintiff also cannot hold the warden liable for the actions of any subordinates. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

The Court finds that Plaintiff failed to comply with the format and deadline requirements imposed in the Court's Scheduling Order, and that any proposed amendment would be futile. Plaintiff's motion is denied.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Facts

Plaintiff filed this lawsuit on May 8, 2025. (Doc. 1). The Court dismissed Plaintiff's original complaint with leave to amend pursuant to 28 U.S.C. § 1915A and Fed. R. Civ. P. 12(b)(6). (Doc. 13). Plaintiff filed an amended complaint containing allegations the Court summarized as follows:

> Plaintiff alleges inmates at Menard Correctional Center with whom he shared a cell had attacked him on two separate occasions: (1) a 2012 attack that left him partially blind in his left eye; and (2) a 2024 attack that resulted in first and second-degree burns on his upper body. Plaintiff alleges that a psychiatrist thereafter diagnosed him with "fear and

depression" and issued him a permit to be housed by himself. Plaintiff alleges that he was then transferred to Western Illinois Correctional Center.

Plaintiff alleges that he told his mental health counselor, Defendant Garcia, about the attacks, his single-cell status, and his diagnoses, but that she refused to issue a single-cell permit or otherwise address his mental health issues. Plaintiff alleges that Defendants Cooley and Ruiz directed other prison guards to "upgrade" disciplinary charges for refusing housing after Plaintiff had twice refused to be housed with a cellmate as retaliation for Plaintiff's prior refusals. Plaintiff alleges that Defendant Cooley and Ruiz, in their capacities as members of the Adjustment Committee, found him guilty and sent him to segregation for 42 days.

Plaintiff alleges that an unidentified prison official occasionally denied him meals while he was housed in segregation and that Defendant Garcia refused to provide "all the mental health treatment for trauma that I was receiving in Menard C.C." Plaintiff alleges that Defendant Greene ignored his grievances.

Plaintiff alleges that upon his release from segregation he continued to refuse housing and that Defendant Forman and Franklin "upgraded" his charges for disobeying a direct order. Plaintiff alleges he returned to segregation for 56 days. Plaintiff alleges that unidentified guards again occasionally denied him meals. Plaintiff alleges that Defendant Littles refused to provide mental health treatment.

(Doc. 22 at 2-3). The Court found that Plaintiff stated an Eighth Amendment claim for deliberate indifference to a serious mental health need against Defendants Garcia and Littles in their individual capacities based on his allegations that they refused to provide any mental health treatment. *Id.* at 4. The Court dismissed all other alleged claims and defendants. *Id.* at 11.

Illinois prison grievance rules require an inmate to first attempt to resolve their issues informally with prison staff, and, if unsuccessful, a prisoner may file a written grievance on a form provided by the prison. 20 Ill. Admin. Code § 504.810(a). The

grievance must be filed "within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance," unless the prisoner "can demonstrate that a grievance was not timely filed for good cause…." *Id.* § 504.810(a). The grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* § 504.810(c). If an inmate does not know the names of the officials involved, he "must include as much descriptive information about the individual as possible." *Id.*

A grievance officer considers each grievance and submits a recommendation to the Chief Administrative Officer ("CAO"), who notifies the inmate of his decision. *Id.* § 504.830(d). An inmate may appeal the CAO's decision to the Director/Administrative Review Board, but he or she must do so within 30 days of the decision. *Id.* § 504.850(a). Once an appeal is received, the Administrative Review Board ("ARB") reviews the appeal and provides the Director with a written report of its findings and recommendations. *Id.* § 504.850(e).

An inmate may also submit a request for a grievance to be handled on an emergency basis by forwarding it directly to the CAO. *Id.* § 504.840. If determined to be a non-emergency, the CAO must notify the inmate that he or she may resubmit the grievance via the normal procedures. *Id.* § 504.840(c). If the CAO determines that the grievance warrants emergency review, "he or she shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." *Id.* § 504.840(b).

The prison grievances rules identify four circumstances that require an inmate to send the grievance directly to the ARB:

1)      Decisions regarding protective custody placement, including continued placement in or release from protective custody;

2)      Decisions regarding the involuntary administration of psychotropic medication;

3)      Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned;

4)      Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.

*Id.* 504.870(a). Once received, the ARB reviews the grievance the same way it handles appeals. *Id.* 504.870(b).

Plaintiff filed an emergency grievance dated February 17, 2025. (Doc. 65-2 at 12). At the top of the form, he checked the boxes indicating the topic of his grievance as Staff Conduct, Disciplinary Report, and "Other," which he defined as "Mental Health Staff and Placement." *Id.* Plaintiff did not mark the box for "medical treatment." *Id.*

Plaintiff states in the grievance that "since being transferred to Western Ill. C.C. mental health staff and placement is continuing to ignore the [trauma] that I have from being almost killed twice." *Id.* at 13. Plaintiff describes attacks he suffered from his previous cellmates, his attempts to be housed with a cellmate at Western, and the symptoms he has experienced from what he described as the resulting lifelong trauma. *Id.* He states, "I was going to speak with mental health about this situation but it never happen[ed]." *Id.* He does not identify any prison officials by name or further

description. Plaintiff requested "that I be housed in a single man cell just like I was in Menard" or a transfer to a different facility. *Id.* at 12.

The CAO/warden granted Plaintiff's request for emergency review on February 18, 2025, and the grievance officer received the grievance on February 19, 2025. *Id.* at 12. In a response dated July 30, 2025, the grievance officer summarized Plaintiff's past and upcoming appointments with mental health staff, indicating that Plaintiff had refused to meet with mental health staff in February, March, and April 2024, that Plaintiff had requested to be removed from the mental health caseload in May 2024, and that, per his request, "you…have been scheduled for an initial evaluation [with mental health staff] on 3/19/25." *Id.* at 10. The grievance officer's response also described the criteria for cellmate assignment, and recommended denial of the grievance as moot. *Id.*

The CAO concurred on August 11, 2025. *Id.* Neither the section relevant to an appeal, nor the ARB records, indicate that Plaintiff appealed this grievance. *Id.*; (Doc. 65-1 at 9). Plaintiff states in his response that officials never told him that the warden had granted his request for emergency review. (Doc. 67 at 4).

The record contains a grievance dated April 14, 2025, wherein Plaintiff stated that "unknown Jane Does of Mental Health" had and were intentionally denying all mental health treatment since his transfer to Western. (Doc. 65-3 at 3). Plaintiff checked the boxes indicating that his grievance concerned staff conduct, mental health and medical treatment, and a disciplinary report. *Id.*

Plaintiff stated therein that he was housed in segregation, that he spoke with a "mental health lady" once a week who refused to address his concerns about having a

cellmate, and that the warden had ignored several emergency grievances. *Id.* at 4.

Plaintiff requested "that I receive my single cell permit and all the rest of my mental

health treatment and that warden Greene respond to my emergency grievance." *Id.* at 3.

The grievance contains no indicia or marks indicating that Plaintiff submitted this

grievance to his counselor or grievance officer. *Id.*

The remaining grievances in the record are not relevant to the claims currently

pending in this lawsuit. *See* (Doc. 65-1 at 10-12) (hearing loss); (Doc. 65-2 at 6-9) (food

service); (Doc. 65-2 at 14-15) (issues at Menard Correctional Center); (Doc. 65-3 at 1-2, 5-

8) (housing and disciplinary tickets).

**B. Legal Standard**

Summary judgment should be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most

favorable to the non-moving party, and all reasonable inferences must be drawn in his

favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for

summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp.

v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more

than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### C. Analysis

The Prison Litigation Reform Act (PLRA) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The PLRA does not define the process a prisoner must utilize; rather, "state law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA." *Lanaghan v. Koch*, 902 F.3d 683, 687 (7th Cir. 2018).

The PLRA requires only that inmates exhaust available remedies. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("An inmate…must exhaust available remedies, but need not exhaust unavailable ones."). A formal grievance process is unavailable when the process: (1) "operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Administrative remedies also become unavailable "[w]hen prison officials fail to timely respond to a prisoner's grievances." *Jones v. Lamb*, 124 F.4th 463, 468 (7th Cir. 2024); *see also Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) ("If administrative remedies are genuinely unavailable or nonexistent because, for example, prison employees failed to respond to properly filed grievances, we consider the prisoner to have satisfied the exhaustion requirement."). Or, when a prisoner "has not been

informed of the process, whether due to misconduct by prison employees, or because his personal circumstances preclude him from being able to make use of the process." *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023).

Failure to exhaust is an affirmative defense, and, therefore, defendants bear the burden of showing that a prisoner failed to exhaust all available remedies, not on a prisoner to show that the remedies were unavailable. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018); *Smallwood*, 59 F.4th at 315.

Defendants argue that Plaintiff's grievances are insufficient because they fail to mention them by name. The prison's grievance rules discussed above permit an inmate to identify the responsible officials by name or other description. An inmate satisfies this requirement if he "offer[s] descriptive information sufficient to put the prison on notice of his claims." *Boyce v. Cox*, 170 F.4th 613, 618 (7th Cir. 2026). Plaintiff stated in his February 17, 2025, grievance that "mental health staff" and "placement" had failed to address the mental health issues he experienced when housed with a cellmate since his transfer to Western. Plaintiff's April 14, 2025, grievance states that "Jane Does of mental health" failed to address the same issues.

Plaintiff's grievances identify officials from specific departments, provide a timeframe, and identify a specific mental health issue and what he believes to be the cause. The grievance officer's response on the merits of the February 2025 grievance permits only the inference that Plaintiff provided sufficient information for officials to determine the nature of his claims, and that Plaintiff's alleged procedural defect did not affect their investigation. The Court finds that Plaintiff's grievances provided sufficient

information to satisfy the grievance rules. *See Boyce*, 170 F.4th at 618 (grievance that stated that "dental staff at Western in July 2022" left him with "a hole in his tooth" was sufficiently descriptive); *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense.").

Plaintiff, nonetheless, did not fully exhaust his administrative remedies through an ARB appeal as the rules require before he filed suit. He can survive summary judgment only if the process became unavailable. He argues this occurred when the CAO/warden failed to advise him of her decision on his request for the February 18, 2025, grievance to be handled on an emergency basis, when the grievance officer did not respond to the same grievance within 60 days of receipt, and, generally, when the warden failed to respond to his other emergency grievances.

The grievance rules requiring the warden to advise inmates of his or her decision regarding emergency grievance review does not specify a timeframe for doing so. 20 Ill. Admin. Code § 504.840(b). The warden's forwarding of Plaintiff's grievance to the grievance officer the day after she found it warranted emergency review and the contents of her August 11, 2025, decision arguably complied with the applicable rule's requirement to "expedite processing…and respond to the offender, indicating what action shall be or has been taken." *Id.* Nor did the grievance officer's failure to respond within the applicable two-month deadline automatically render the process unavailable.

*Ford*, 362 F.3d at 400 (60-day deadline for grievance officer to respond is aspirational, not mandatory).

The dispositive question as to the availability of Plaintiff's administrative remedies hinges on the reasons for the grievance officer's delay. *Compare id.* (grievance process remained available despite grievance officer's 6-month delay in issuing a decision because the investigation necessarily continued past the 60-day timeframe), *with Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020) (process became unavailable when prisoner did not receive response to standard grievance and ARB provided two unhelpful responses without indicating if officials were still investigating).

The grievance officer's response to Plaintiff's February 17, 2025, grievance that "you…have been scheduled for an initial evaluation on 3/19/25" suggests that Plaintiff's initial evaluation had not yet occurred at the time the grievance officer obtained that information. The response does not otherwise contain information suggesting that the grievance officer required, or tried to obtain, additional information in the four months that elapsed from the date the grievance officer presumably spoke to mental health officials. Defendants have not explained this delay or why the warden thereafter required another ten days to concur.

The Court finds that Defendants have not met their burden to show that Plaintiff's administrative remedies as it relates to his February 18, 2025, grievance remained available past March 19, 2025. Because Plaintiff grieved an ongoing condition in his February 2025 grievance, he was not required to exhaust additional grievances on the issue. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

**IT IS THEREFORE ORDERED:**

1.  Plaintiff's Motion for Leave to File an Amended Complaint [62] is DENIED.

2.  Defendants' Motion for Summary Judgment [65] is DENIED.

3.  The stay on discovery on the merits is lifted.

4.  The Court resets deadlines as follows: discovery shall be completed by

    November 16, 2026. Dispositive motions shall be filed by December 16, 2026.

**ENTERED** this 13th day of August, 2026.


/s/Douglas J. Quivey
DOUGLAS J. QUIVEY
UNITED STATES MAGISTRATE JUDGE